IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BURKE VEAZEY, Individually, )<br>as Personal Representative of )<br>the ESTATE OF ANN JORDAN. )<br>deceased, )<br> )<br>            Plaintiff, )<br> )<br>     vs. )<br> )<br>SHAWN HUBBARD, Individually, )<br>AQUATIC ADVENTURES, INC., a )<br>Hawaii Corporation, )<br> )<br>            Defendants. )<br>_____ ) | CIVIL NO. 08-00293 HG-LEK |

**ORDER GRANTING DEFENDANTS' MOTION TO
DISQUALIFY TOM NEUMAN, M.D. AS EXPERT WITNESS**

Before the Court is the Motion to Disqualify

Tom Neuman, M.D. as Expert Witness ("Motion"), filed on

August 29, 2008 by Defendants Shawn Hubbard and Aquatic

Adventures, Inc., a Hawaii corporation (collectively

"Defendants").  Plaintiff Burke Veazey, individually, and as

Personal Representative of the Estate of Ann Jordan, Deceased[1]

("Plaintiff") filed his memorandum in opposition on September 18,

2008.  Defendants did not file a reply, but they filed a

Declaration of Stacy L. Raphael on October 1, 2008.  This matter

came on for hearing on October 7, 2008.  Appearing on behalf of

Defendants was Stephen Hewitt, Esq., and appearing on behalf of

_____

[1] Veazey is Jordan's son.  [Complaint for Damages, filed
June 19, 2008 ("Complaint"), at ¶ 3.]

Plaintiff were Richard Lesser, Esq., and Michelle Nelson Bass, Esq.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

On March 16, 2008, Jordan participated in a Discover Scuba Diving course taught by Defendants.  Hubbard was Jordan's instructor and accompanied her on the guided scuba dive.  Jordan encountered difficulties during the dive and almost drowned, which allegedly resulted in her death on March 23, 2008.

Plaintiff filed the instant action June 19, 2008.  The Complaint alleges the following claims: wrongful death - negligence; fraud and deceit; and a survival action.[2]  Plaintiff seeks general, special, and punitive damages, attorney's fees and costs, prejudgment interest, and other appropriate relief.

In the instant Motion, Defendants state that, on April 17, 2008, Defendants' counsel, Stephen Hewitt, sent an e-mail to dive medicine expert Tom Neuman, M.D.  Mr. Hewitt's law firm had previously retained Dr. Neuman as an expert in other cases.  The subject line of the e-mail read "Ann Jordan" and it stated "We would like to retain you as a expert medical consultant to this case which arises out of the death of a 69

---

[2] On October 6, 2008, the district judge granted Defendants' Motion to Dismiss Portions of Plaintiff's Complaint, as to the fraud and deceit claim.

year old woman while shore diving in Hawaii on March 16, 2008."
[Motion, Decl. of Stephen L. Hewitt ("Hewitt Decl."), Exh. A.]
Later that day, Dr. Neuman replied that he was "glad to help" and
instructed Mr. Hewitt to send the $1,5000 retainer and the
material that Mr. Hewitt wanted him to review.  [Exh. B to Hewitt
Decl.]  Mr. Hewitt responded that he would send the retainer
check out within a few days and that he would forward the autopsy
report to Dr. Neuman when it was issued.  [Exh. C to Hewitt
Decl.]  According to Defendants, Mr. Hewitt sent the $1,500
retainer check to Dr. Neuman on April 25, 2008.  [Exh. D to
Hewitt Decl.]

       At some point between April 17 and April 25, 2008,
Mr. Hewitt spoke with Dr. Neuman on the telephone about the
instant case.  According to Mr. Hewitt, they "briefly talked
about the incident.  [He] mentioned a few of the medical issues
and concerns [he] had which [he] wanted Dr. Newman (sic) to
evaluate and comment upon after he had reviewed the records."
[Hewitt Decl. at ¶ 5.]  At the time, Mr. Hewitt believed that the
conversation was confidential because he had retained Dr. Neuman
as an expert in other cases he was handling.  [Id. at ¶ 6.]  The
Motion alleges that "Dr. Neuman was made privy to confidential
information about counsel's thoughts and questions in the case,
and the anticipated defenses counsel hoped to develop as to the
plaintiff's claims."  [Motion, Mem. of Points & Authorities at

4.]

On June 20, 2008, Mr. Hewitt's office sent Dr. Neuman a copy of Jordan's autopsy report.  The next day, Dr. Neuman informed Mr. Hewitt's office that he had been retained by other counsel and could not discuss the case with them.  Also on June 21, 2008, Plaintiff's counsel, Richard Lesser, contacted Mr. Hewitt's office and informed them that Plaintiff had retained Dr. Neuman.  Mr. Lesser requested that they cease all further contact with Dr. Neuman about the case.  On June 25, 2008, Mr. Lesser sent Mr. Hewitt a letter which noted that Mr. Hewitt and Dr. Neuman had "some preliminary communication" but that Dr. Neuman had merely agreed to serve as Defendants' expert on receipt of the retainer.  [Exh. E to Hewitt Decl.] Mr. Lesser stated that Dr. Neuman never received the check and argued that Dr. Neuman did not have to recuse himself because Mr. Hewitt and Dr. Neuman never exchanged confidential information.  [Id.]  After further communications on the issue, the instant Motion followed.

Defendants argue that this Court must disqualify Dr. Neuman because it was objectively reasonable for defense counsel to conclude that they had a confidential relationship with Dr. Neuman and they disclosed confidential or privileged information to him.  Defendants emphasize that caselaw does not require that the expert be retained *per se*.  They argue that, in

light of the various correspondence and the one telephone call between counsel and Dr. Neuman, as well as their preexisting relationship from other cases, there was clearly a relationship between them that would have allowed Mr. Hewitt to reasonably believe that any communication about this case would be confidential.  Further, at no time during those initial communications did Dr. Neuman inform Mr. Hewitt that he had already been retained by other counsel.

Defendants argue that, during the telephone conversation that Mr. Hewitt had with Dr. Neuman, they reviewed the facts of the case and Mr. Hewitt mentioned medical issues and concerns that he had about the case.  Further, "Mr. Hewitt revealed confidential information touching upon case strategy, the role of experts Hewitt & Truszkowski was seeking to employ, and possible defenses to plaintiff's claims."  [Motion, Mem. of Points & Authorities at 8.]  Thus, Defendants argue that counsel conveyed confidential information to Dr. Neuman under the reasonable assumption that a confidential relationship existed.

Defendants also argue that, in addition to prohibiting Plaintiff from using Dr. Neuman as an expert witness, this Court must also prohibit Plaintiff from utilizing Dr. Neuman's services for any purpose in this action.  They argue that disqualification would be meaningless if Plaintiff can still use Dr. Neuman as a consultant.

Plaintiff filed a declaration from Dr. Neuman with his memorandum in opposition.  Dr. Neuman states that, after his April 17, 2008 e-mail instructing Mr. Hewitt to send the retainer fee, he neither opened a file nor responded in any substantive manner.  Further, he never received a retainer check.  [Decl. of Tom Neuman, M.D. in Supp. of Pltf.'s Opp. to Defs.' Motion ("Neuman Decl.") at ¶ 2.]

In early May 2008, Mr. Lesser contacted Dr. Neuman about the instant case.  On May 12, 2008, Mr. Lesser sent him a retainer check along with some of Jordan's medical records.  [Exh. 6 to Neuman Decl.]  Mr. Lesser sent him a follow up letter on May 21, 2008 with further information about the case.  [Exh. 8 to Neuman Decl.]  Dr. Neuman reviewed these materials and spoke with Mr. Lesser on May 20 and 23, 2008, as reflected in Dr. Neuman's billing records.  [Neuman Decl. at ¶ 4, Exh. 7.]  On or about June 17, 2008, Mr. Lesser faxed Jordan's autopsy report to Dr. Neuman.

On June 20, 2008, Dr. Neuman received an e-mail from Stacy Raphael, Esq., an attorney with Mr. Hewitt's law firm. Until that point, Dr. Neuman had not received anything from Mr. Hewitt's office in the two months since Mr. Hewitt contacted him.  [Neuman Decl. at ¶ 5, Exh. 9.]  The e-mail included enclosures for "a matter we have not discussed yet."  Ms. Raphael asked Dr. Neuman to review them for discussion during a

conference call scheduled for June 23, 2008. [Exh. 9 to Neuman Decl.] Ms. Raphael sent the Jordan autopsy report and, when Dr. Neuman read it, he realized for the first time that Ms. Raphael was referring to the same case that Mr. Lesser had retained him for. [Neuman Decl. at ¶ 5.] On June 21, 2008, Dr. Neuman replied that he had already been retained by another attorney in instant case. On June 23, 2008, Ms. Raphael wrote back, reminding Dr. Neuman that Mr. Hewitt had retained him in April for the instant case. [Exh. 11 to Neuman Decl.]

Dr. Neuman states that, other than the autopsy report, he never received any information about the instant case from Defendants' counsel. Further, he does not recall ever having a substantive conversation about the instant case with Mr. Hewitt. Dr. Neuman's practice is to record the time spent on any substantive conversation with an attorney regarding even a potential case so that it can be applied to future billings. Dr. Neuman has no record of billing Mr. Hewitt for any conversation about the instant case. Dr. Neuman denies speaking with Mr. Hewitt about the instant case between April 17 and 25, 2008. Dr. Neuman called Mr. Hewitt's office on April 21, 2008, but only to speak with Ms. Raphael about another case. [Neuman Decl. at ¶¶ 6-7.] This conversation is reflected in Dr. Neuman's billing records. [Exh. 4 to Neuman Decl.]

Plaintiff argues that, although there is no bright-line

7

rule, an expert should be disqualified from serving as a party's expert if the opposing party had a confidential relationship with the expert **and** the opposing party disclosed relevant, confidential information to the expert.  The party seeking disqualification bears the burden of proving that both factors are present.  In addition, the court considering a request for disqualification should consider the fairness to the affected party and the integrity of the judicial process.

Plaintiff agrees that the opposing party must have had a reasonable belief that a confidential relationship existed with the expert such that the opposing party could expect that any communication would be confidential.  Plaintiff also argues that the relationship must be substantial enough to warrant disqualification or other judicial remedy.  Plaintiff notes that courts look at such factors as: whether there was a formal confidentiality agreement; whether the expert was retained; the number of times the expert met with the attorney; whether they discussed work product; whether the attorney provided documents to the expert; whether the expert received a fee; and whether the expert formed any specific ideas about the case.

Plaintiff argues that, based on these factors, there was no confidential relationship between Mr. Hewitt and Dr. Neuman.  In the April 17, 2008 e-mail exchange, Dr. Neuman only agreed to serve as an expert on receipt of the retainer.

8

Mr. Hewitt did not disclose any confidential information in the April 17, 2008 e-mail exchange.  He stated that a sixty-nine year-old woman died on March 16, 2008 while shore diving in Hawaii and that he represented the PADI dive instructor who was with her.  All of this information was alleged in the Complaint and is not confidential.  Further, Mr. Hewitt did not ask Dr. Neuman to sign a retainer agreement or a confidentiality agreement, nor did he provide Dr. Neuman with any materials to review.  According to Plaintiff, as far as Dr. Neuman is concerned, Defendants did not retain him because he never received anything further from them until after Plaintiff retained him.  Mr. Hewitt did ask Dr. Neuman to review and comment on Jordan's autopsy report.  Plaintiff, however, argues that the autopsy report was not a confidential document disclosed in a confidential relationship because Mr. Lesser provided Dr. Neuman with it before Defendants did.

Dr. Neuman denies speaking with Mr. Hewitt on the telephone between April 17 and 25, 2008.  Plaintiff argues that, even if the conversation did take place, it did not create a confidential relationship.  It was a single telephone call in which Mr. Hewitt and Dr. Neuman only spoke briefly about the case.  Plaintiff argues that it was only an initial consultation rather than the beginning of a long-term, confidential relationship.  Mr. Hewitt's declaration says that they discussed

9

his concerns and medical issues in the case, but Plaintiff argues that, because Plaintiff already had all of Jordan's medical records, these concerns were not based on confidential or privileged information.  Although the Motion states that Mr. Hewitt disclosed anticipated defenses, case strategy, and the possible role of Defendants' experts, these claims are not supported by Mr. Hewitt's declaration.

Plaintiff argues that the fact that Mr. Hewitt cannot recall the exact date of the conversation supports Plaintiff's position that it never took place.  As a defense attorney, Mr. Hewitt would have been expected to note the call in his billing records.  Further, Dr. Neuman did not note the call in his billing records.  Dr. Neuman's phone records show that there were two calls to Mr. Hewitt's office, but those were to discuss another case with Ms. Raphael.

Finally, Plaintiff argues that he would be unduly disadvantaged if Dr. Neuman is disqualified.  Dr. Neuman's education and experience is highly specialized and his analysis is critical to Plaintiff's case.

## DISCUSSION

A district court has broad discretion to disqualify expert witnesses to ensure a fair and orderly trial, see Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980), and to "protect the integrity of the adversary process, protect

10

privileges that otherwise may be breached, and promote public confidence in the legal system." Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (citing Campbell, 619 F.2d at 27; Erickson v. Newmar Corp., 87 F.3d 298, 300 (9th Cir. 1996) (commenting favorably on-without applying-rules that other courts have applied in cases in which a party seeks disqualification of an expert witness for "switching sides"); Koch Ref. Co. v. Jennifer L. Boudreaux M/V, 85 F.3d 1178, 1181 (5th Cir. 1996)) (some citations omitted)

There is no bright-line rule for expert disqualification. See Hewlett-Packard, 330 F. Supp. 2d at 1092. Courts will generally disqualify an expert witness if: 1) the opposing party and the expert had a confidential relationship; and 2) the opposing party disclosed confidential information to the expert that is relevant to the case at issue. See id. at 1092-93. The court should also consider fundamental fairness and any prejudice that will result if the expert is or is not disqualified. See id. at 1094-95. Finally, the court should weigh policy concerns and whether disqualifying the expert will promote the integrity of the legal process. See id. at 1093, 1095.

## I.   **Confidential Relationship**

The party seeking disqualification need not show that it actually retained the expert. See id. at 1093. Thus, the

fact that Dr. Neuman never received the retainer check from Mr. Hewitt is not determinative in this case.  Defendants, however, must show that it was reasonable for their counsel to expect that any communications they had with Dr. Neuman about the instant case would be confidential.  See id.

> In evaluating the reasonableness of the party's assumption, the Court may consider many factors, including
>> whether the relationship was one of long standing and involved frequent contacts instead of a single interaction with the expert, whether the expert is to be called as a witness in the underlying case, whether alleged confidential communications were from expert to party or vice-versa, and whether the moving party funded or directed the formation of the opinion to be offered at trial.
>
> Stencel v. Fairchild Corp., 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001).  Other factors include whether the parties entered into a formal confidentiality agreement, whether the expert was retained to assist in the litigation, the number of meetings between the expert and the attorneys, whether work product was discussed or documents were provided to the expert, whether the expert was paid a fee, whether the expert was asked to agree not to discuss the case with the opposing parties or counsel, and whether the expert derived any of his specific ideas from work done under the direction of the retaining party.  See, e.g., Mayer [v. Dell], 139 F.R.D. [1,] 2-3 [(D.D.C. 1991)]; Paul [v. Rawlings Sporting Goods Co.], 123 F.R.D. [271,] 280 [(S.D. Ohio 1988)].

Id.

On April 17, 2008, Mr. Hewitt wrote Dr. Neuman and stated that he wanted to retain Dr. Neuman as an expert medical consultant in a "case which arises out of the death of a 69 year

old woman while shore diving in Hawaii on March 16, 2008.  We represent the Padi divemaster who was diving with the decedent." [Exh. A to Hewitt Decl.]  The subject line of Mr. Hewitt's e-mail read "Ann Jordan".  [Id.]  Dr. Neuman agreed and instructed Mr. Hewitt to send the retainer and the materials to be reviewed. Mr. Hewitt responded that he would send the retainer within a few days and that he would send the autopsy report when he received it.  Mr. Hewitt attempted to send the retainer check with a cover letter to Dr. Neuman on April 25, 2008.[3]  [Exh. D to Hewitt Decl.]

At the hearing on the instant Motion, Mr. Hewitt represented that, at the time of the April 17, 2008 e-mail exchange, he had three to five other matters that he was working on with Dr. Neuman.  Dr. Neuman's response to Mr. Hewitt's initial e-mail clearly shows a high degree of familiarity between them.  [Exh. B to Hewitt Decl. ("I suspect you don't need another letter outlining my fees etc.").]  This Court finds that, in

---

[3] Although Dr. Neuman never received the cover letter and retainer check, the fact that Mr. Hewitt attempted to send them is relevant to whether counsel reasonably believed that they had a confidential relationship with Dr. Neuman.  Plaintiff's counsel alleges that Mr. Hewitt never attempted to send the retainer check and that he created a letter dated April 25, 2008 in the midst of the dispute over Dr. Neuman's disqualification. Plaintiff's counsel, however, offers no evidence supporting this allegation and this Court declines to read such a nefarious plan into Mr. Hewitt's actions.  Mr. Hewitt stated in his declaration that he sent the retainer and cover letter to Dr. Neuman.  There may be any number of innocent reasons to explain why Dr. Neuman never received the check and letter.

light of their pre-existing relationship and the fact that Dr.

Neuman stated that he was glad to help with this case, it was

reasonable for Mr. Hewitt to believe that he had a confidential

relationship with Dr. Neuman and that any communications about

the instant case would be confidential.

    **B.**   **Confidential Information**

       The information that the party seeking disqualification

provided to the expert must be particularly significant or

clearly attorney work product or attorney-client privileged

information.  See Hewlett-Packard, 330 F. Supp. 2d at 1094.

> It could include discussion of the party's
> "strategy in the litigation, the kinds of experts
> [the party] expected to retain, [the party's] view
> of the strengths and weaknesses of each side, the
> role of each of the [party's] experts to be hired
> and anticipated defenses." Mayer, 139 F.R.D. at
> 4.  Thus, at least one court has concluded that
> "[c]ommunication based upon technical information
> as opposed to legal advice is not considered
> privileged." Nikkal Indus., Ltd. v. Salton, Inc.,
> 689 F. Supp. 187, 191-92 (S.D.N.Y. 1988).

Id. (alterations in original) (some citations omitted).

       There is no presumption that confidential information

was exchanged between a party and an expert.  The party seeking

disqualification must identify "specific and unambiguous

disclosures that if revealed would prejudice the party." Id.

(citing Mays v. Reassure Am. Life Ins. Co., 293 F. Supp. 2d 954,

957 (E.D. Ark. 2003) (requiring more than "vague assertions"); In

re Ambassador Group, Inc., Litig., 879 F. Supp. 237, 243

(E.D.N.Y. 1994)).  First, the information in the April 17, 2008 e-mail exchange was not confidential because the facts contained therein are contained in the Complaint.  See Stencel v. Fairchild Corp., 174 F. Supp. 2d 1080, 1084 (C.D. Cal. 2001) (noting that pleadings cannot be confidential information because they are public record).

Mr. Hewitt states that, some time between April 17 and 25, 2008, he spoke with Dr. Neuman on the phone and they "briefly talked about the incident."  [Hewitt Decl. at ¶ 5.]  Mr. Hewitt "mentioned a few of the medical issues and concerns [he] had which [he] wanted Dr. Newman (sic) to evaluate and comment upon after he had reviewed the records."  [Id.]  The Court notes that Dr. Neuman denies that this conversation took place at all.

The Motion alleges that, during this conversation, "Dr. Neuman was made privy to confidential information about counsel's thoughts and questions in the case, and the anticipated defenses counsel hoped to develop as to the plaintiff's claims." [Motion, Mem. of Points & Authorities at 4.]  The Motion also states that "Mr. Hewitt revealed confidential information touching upon case strategy, the role of experts Hewitt & Truszkowski was seeking to employ, and possible defenses to plaintiff's claims."  [Id. at 8.]  This Court, however is not inclined to consider these statements because they are not supported by Mr. Hewitt's declaration.

15

Finally, Defendants' counsel sent Dr. Neuman a copy of Jordan's autopsy report on June 20, 2008.  Jordan's autopsy report was not confidential information.  This Court therefore finds that Defendants did not disclose confidential information to Dr. Neuman.

C.    **Fairness and Prejudice**

In addition to the two factors, this Court must also consider fundamental fairness and any resulting prejudice from disqualification or denial of disqualification.  See <u>Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.</u>, Nos. C-95-03577 DLJ, C-96-00942 DLJ, 1998 WL 230981, at *1-2 (N.D. Cal. Feb. 27, 1998) (Experts may be disqualified "as part of the court's inherent power to preserve the fairness and integrity of the judicial proceedings." (quoting <u>Paul v. Rawlings Sporting Goods, Co.</u>, 123 F.R.D. 271, 277-78 (S.D. Ohio 1988))).

Defendants argue that they lacked confidential information to disclose to Dr. Neuman, at the pre-Complaint stage during which they retained him, because Defendants did not have access to critical information about Jordan's injury and Plaintiff's claims, such as the autopsy and other medical records, which would permit counsel to develop his or her case analysis and legal strategy.  Privacy and other legal considerations served to bar Defendants from ready access to this information.  This Court agrees it would be manifestly unfair to

16

have the party who controls access, at the pre-Complaint and
early stages of the litigation, to key information about the case
(<u>i.e.</u>, Plaintiff) keep Dr. Neuman as an expert witness when
Defendant was barred from obtaining critical information with
which to develop theories and strategies to provide to
Dr. Neuman.  Ruling in that manner would necessarily ensure that,
where a party is barred from obtaining critical records without
the power of a subpoena, then that party could never be first to
retain an expert witness in the pre-litigation and early stages
of litigation.  Such an outcome would be manifestly unfair and
unduly prejudicial.

        Here, Defendants recognized from the bare facts of the
case that an expert such as Dr. Neuman would be necessary and
relevant to prepare the case.  While the better practice would
have been for Defendant to have had Dr. Neuman execute a written
retainer agreement, <u>see</u>, <u>e.g.</u>, <u>Wang Labs., Inc. v. Toshiba Corp.</u>,
762 F. Supp. 1246, 1250 (E.D. Vir. 1991), it is not a
requirement.  The situation at hand is not one in which a
defendant contacts an expert and then sits on his or her hands
for months before conveying confidential information that can be
readily obtained and provided to the expert.  Rather, Defendants'
counsel diligently contacted Dr. Neuman quite early in his
representation.  The fact that this action was in its earliest
stage at that time, and the fact Defendants' counsel sent the

17

autopsy report within sixty days after initially contacting
Dr. Neuman demonstrates that Defendants were not sitting on their
hands in getting key information to their presumably retained
expert witness.

Lastly, Dr. Neuman is, as both counsel readily admitted
in oral argument, only one of several expert witnesses in the
field, and there is no reason to believe that the parties will be
unable to retain another expert.  Dr. Neuman's area of expertise
is not unique nor so obscure that there are no other individuals
with credentials in the same field.

This Court therefore finds that the principles of
fairness and prejudice support the granting of the Motion.

**D.    Policy Concerns**

Finally, the Court should look at the parties'
strategic positions and consider the ruling's effect on retaining
parties and experts.  See Hewlett-Packard, 330 F. Supp. 2d at
1095.  Courts have balanced policy considerations such as:

> ensuring access to witnesses, allowing experts to
> seek professional employment, preventing
> unscrupulous attorneys from creating superficial
> relationships with experts solely for the purpose
> of seeking disqualification, and the ability to
> hire a different expert in time for trial.

Am. Empire Surplus Lines Ins. Co. v. Care Ctrs., Inc., 484 F.
Supp. 2d 855, 857 (N.D. Ill. 2007) (citing Koch Refining Co. v.
Jennifer L. Boudreaux M/V, 85 F.3d 1178, 1182-83 (5th Cir. 1996);
Chamberlain Group v. Interlogix, Inc., 2002 WL 653893 at *4 (N.D.

18

Ill. April 19, 2002)).  In this case, Dr. Neuman first consented in an e-mail to be retained as an expert on behalf of Defendants. He apparently later agreed to serve as Plaintiff's expert on the basis that he had never received a retainer fee by Defendants and believed that he was then free to accept a retainer from Plaintiff's counsel.  In light of these circumstances, it would undermine public confidence in the judicial process and be unfair to allow Dr. Neuman to serve as an expert witness or consultant on behalf of either party.

**CONCLUSION**

On the basis of the foregoing, Defendants' Motion to Disqualify Tom Neuman, M.D. as Expert Witness, filed August 29, 2008, is HEREBY GRANTED.  Dr. Neuman shall not be permitted to serve nor be retained as an expert or consultant by any party.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 11, 2008.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**BURKE VEAZEY, ETC. V. SHAWN HUBBARD, ETC., ET AL; CIVIL NO. 08-00293; ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY TOM NEUMAN, M.D. AS EXPERT WITNESS**